**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**SIMONE SAMUELS,**

                    **Plaintiff,**                        **22-cv-1904 (JGK)**

          **- against -**                                 <u>**MEMORANDUM OPINION**</u>
                                                          <u>**AND ORDER**</u>

**CITY OF NEW YORK, ET AL.,**

                    **Defendants.**
_____

**JOHN G. KOELTL, District Judge:**

      The plaintiff Simone Samuels, an employee of the New York
City Department of Transportation ("DOT"), brought this action
against the City of New York (the "City") and the DOT, asserting
claims of discrimination, retaliation, negligence, and hostile
work environment, in violation of the Americans with Disabilities
Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 <u>et seq.</u>; Title VII of the
Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e <u>et seq.</u>;
the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law
§§ 290 <u>et seq.</u>; and the New York City Human Rights Law ("NYCHRL"),
N.Y.C. Admin. Code §§ 8-101 <u>et seq.</u> The defendants now move to
dismiss the plaintiff's amended complaint, ECF No. 20 ("Compl."),
pursuant to Federal Rule of Civil Procedure 12(b)(6). For the
following reasons, the motion to dismiss is **granted in part** and
**denied in part**.

**I.**

**A.**

The following facts are taken from the amended complaint and are accepted as true for purposes of the motion to dismiss.[1]

The plaintiff has been employed as a construction worker at the DOT since 2010. Compl. ¶ 11. The plaintiff is one of the DOT's few female employees. Id. The plaintiff alleges that "[t]hroughout the course of her employment," her DOT co-workers have subjected her to harassment "due to her gender." Id. ¶ 12. The first alleged incident occurred in March 2017, when a male co-worker ("Worker 1") massaged the plaintiff's buttocks as she entered a truck. Id. ¶ 13. Before this incident, two other female DOT employees had filed complaints against Worker 1 to report instances of workplace misconduct. Id. ¶ 14.

In response to the March 2017 incident, the plaintiff filed a formal complaint against Worker 1 with DOT management. Id. ¶ 15. "Worker 1 admitted in front of the supervisor that he 'grabbed [the plaintiff's] ass.'" Id. Nevertheless, DOT management tried to convince the plaintiff that Worker 1's conduct was not "as severe" as she suggested -- a response that the DOT allegedly gave to other female employees who had complained about harassment. Id. ¶ 18. Although the plaintiff had formally complained about

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Worker 1's misconduct, "[i]t took nine months and multiple complaints against [him]" before the DOT terminated his employment. Id. ¶ 16. At some point in the nine-month period between the plaintiff's formal complaint and Worker 1's termination, Worker 1 approached the plaintiff from behind and told her, "I'm never going to be that far from you," causing her to scream. Id. ¶ 17.

In 2018, another co-worker ("Worker 2") head-butted the plaintiff, causing pain that required medical treatment. See id. ¶ 19. The plaintiff filed a written complaint with the DOT's Equal Employment Opportunity ("EEO") Office, but when the plaintiff discussed the incident with an EEO Officer, the EEO Officer asked her repeatedly, "[A]re you sure?" Id. ¶ 20. Worker 2 was never disciplined for the incident, and eventually, he was promoted to supervisor. Id. ¶ 21.

The plaintiff alleges that in response to her complaints, the DOT labeled her a "troubled employee." Id. ¶ 22. In August 2019, the plaintiff was forced to clean a male co-worker's truck, which was "disgusting and dirty." Id. ¶ 23. Generally, each employee was responsible for their own truck, but the plaintiff was "given a bucket and brush" and instructed to clean the co-worker's truck without explanation. Id. The plaintiff alleges that the "purpose of th[is] assignment was to degrade and humiliate" her, and to "punish[] [her] in retaliation for filing complaints" of workplace misconduct. Id.

3

In January 2020, another co-worker ("Worker 3") shoved the plaintiff against a wall and choked her while screaming into her face and cursing at her. Id. ¶ 24. Two other co-workers had to "force Worker 3 off of [the plaintiff]." Id. As a result of this incident, the plaintiff had to seek medical treatment. Id.

After the incident, Worker 3 continued to make aggressive comments and threats to the plaintiff, causing the plaintiff to feel "uncomfortable and scared for her safety." Id. ¶¶ 25-26. The plaintiff filed a complaint against Worker 3, and eventually, the DOT moved the plaintiff to a new yard to work. Id. ¶ 28. However, the plaintiff and Worker 3 were placed "on the same job sites," and Worker 3 "continue[d] to harass her." Id.

As a result of this continued harassment, the plaintiff requested a transfer out of the work unit at least 19 times. Id. ¶ 29. The Deputy Commissioner of the DOT denied each request. Id. At one point, the Deputy Commissioner informed the plaintiff that she was "not leaving" and threw a written copy of her transfer request into the trash. Id. ¶ 30. The plaintiff was never given a reason why her transfer requests were denied. Id. ¶ 31. Later, an internal DOT office advised the plaintiff that she should pay restitution to Worker 3, and during a discussion about Worker 3's attack, a DOT investigator told the plaintiff that she should "let it go." Id. ¶¶ 32-33. The plaintiff alleges that this comment "was representative of [the] DOT consistently attempting to

4

downplay the severity of incidents and influence victims to get them to voluntarily dismiss their complaints." Id. ¶ 34.

Later in 2020, the plaintiff was ordered to sort through the garbage and separate discarded food -- a task that was not part of her duties. Id. ¶ 35. The plaintiff alleges that this task, like the truck-cleaning assignment, was given to her "in order to humiliate and degrade her for filing complaints." Id. Then, on February 8, 2021, the plaintiff's supervisor asked her to move several 50-pound bags of salt while the plaintiff was performing a snow removal assignment. Id. ¶ 36. While removing one of the bags, the plaintiff "felt a pop and terrible pain in her shoulder." Id. The plaintiff informed her supervisor that she was in "terrible pain," but her supervisor did not allow her to stop working until the incident was relayed to the supervisor's boss. Id. ¶ 37. The plaintiff was taken to the hospital and diagnosed with a torn rotator cuff. Id.

After the injury, and despite several requests, the plaintiff was not offered any change in work duties. Id. ¶ 38. Instead, the plaintiff was required to continue lifting heavy items, exacerbating her injury. Id. Eventually, the plaintiff's doctor called her supervisor and demanded that her assignments be changed. Id. ¶ 39. The DOT gave the plaintiff three weeks off, but it "refused to change or modify her duties." Id.

5

On March 25, 2021, the plaintiff's supervisor directed one of the plaintiff's co-workers ("Worker 4") to operate a piece of equipment called an attenuator, even though Worker 4 lacked the necessary training. Id. ¶ 40. The plaintiff alleges that Worker 4 mishandled the attenuator and "operated it negligently," causing an injury to the plaintiff's hip. Id. This injury significantly impaired the plaintiff's "physical ability," and medical testing revealed that she would need a hip replacement. Id. ¶¶ 41-42.

The plaintiff made additional requests for an accommodation, but she was "not offered any change in duties or [a] transfer to another department." Id. ¶ 42. The plaintiff was allegedly told that DOT management "does not care what the doctor say[s], [the plaintiff] is going to do the work or be fired." Id. ¶ 43. The plaintiff continued to make requests for an accommodation, which the DOT "summarily denied." Id. ¶ 45. The DOT "refused to engage in any interactive process" with the plaintiff "to determine whether any accommodation was available to her." Id. Meanwhile, the plaintiff alleges that another employee was "given office work for one week for a 'headache.'" Id. ¶ 44.

On July 22, 2021, the DOT formally informed the plaintiff that it would not provide her with any accommodations. Id. ¶ 46.[2]

---

[2] The amended complaint refers to this date as "July 22, 2022," Compl. ¶ 46, but it is clear from the chronology of events that the proper year was 2021, and "2022" was a typographical error.

Then, on August 4, 2021, after the plaintiff obtained counsel, the DOT instructed the plaintiff to fill out the necessary paperwork for an accommodation. Id. ¶ 47. By that point, six months had passed since the plaintiff made her initial accommodation request. Id. The plaintiff alleges that during this six-month interval, her supervisor repeatedly harassed and threatened her. Id. ¶ 48. The supervisor allegedly threatened to assign the plaintiff to the attenuator (the equipment that caused her hip injury), refused to give the plaintiff breaks during the workday, and insisted that the plaintiff would have to keep lifting 50-pound bags of salt. See id. The plaintiff also alleges that, throughout this time period, she was "written up for minor violations" without any basis in fact. Id. ¶ 49.

On January 28, 2022, the plaintiff received a purported accommodation that required her to stand all day on her broken hip, causing additional injury. Id. ¶ 50. Finally, on February 22, 2022, the plaintiff was given a proper accommodation, namely, "100% desk duty." Id. ¶ 51. The plaintiff alleges that during the lengthy wait for a reasonable accommodation from the DOT, she endured "immense pain and suffering" that "may have resulted in additional medical care and treatment." Id. ¶ 51. In addition, the plaintiff alleges that she has experienced "severe anxiety, humiliation," "emotional and physical trauma," "loss of income,"

and other injuries as a result of her treatment while employed
at the DOT. Id. ¶ 53.

**B.**

Before initiating this action, the plaintiff submitted a
formal charge of workplace misconduct to the Equal Employment
Opportunity Commission ("EEOC"), which opened a case under EEOC
Charge No. 520202101082. Id. ¶ 5. On December 7, 2021, the EEOC
provided the plaintiff with a right-to-sue letter. Id. ¶ 7. The
plaintiff commenced this lawsuit on March 6, 2022, within 90
days of receiving the right-to-sue letter. See ECF No. 1.

The amended complaint contains a single count styled as
a cause of action for "disability discrimination, retaliation,
negligence, and hostile work environment," all in violation of
Title VII, the ADA, the NYSHRL, and the NYCHRL. Compl. Claim I
(p. 10, ¶¶ 54-55). The plaintiff also argues that she has stated
a claim for gender discrimination, although she does not refer
to such a claim in her amended complaint. See Pl.'s Opp'n, ECF
No. 29, at 9-10. The pleading is therefore defective, in that it
groups all of the plaintiff's claims into a single cause of action
and fails to list the gender discrimination claims in the "Claims
for Relief" section. However, it is clear from the plaintiff's
substantive allegations that she intended to assert each of these
claims independently, and these defects in form could have been
easily remedied with another opportunity to amend the complaint.

Thus, the Court considers the plaintiff's claims individually, treating the amended complaint as if it had separately asserted (1) an ADA disability discrimination claim, (2) a Title VII gender-based discrimination claim, (3) ADA and Title VII hostile work environment claims, (4) ADA and Title VII retaliation claims, (5) NYSHRL and NYCHRL claims that parallel each of these federal statutory claims, and (6) a common-law negligence claim.[3]

The defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 24. For the reasons set forth below, the motion to dismiss is **granted in part** and **denied in part.**

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss a claim if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."

---

[3] The City's papers in support of its motion to dismiss appear to assume that the plaintiff has pleaded this set of claims.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009). While the Court should construe the
facts alleged in the light most favorable to the plaintiff, it
need not accept as true legal conclusions contained in the
complaint. Id.

### III. Preliminary Issues

#### A. Claims against the DOT

The defendants move to dismiss all of the plaintiff's
claims against the DOT, arguing that the DOT is not a suable
entity. Pursuant to the New York City Charter, "[a]ll actions
and proceedings for the recovery of penalties for the violation
of any law shall be brought in the name of the city of New York
and not in that of any agency." N.Y.C. Charter Ch. 17 § 396. Thus,
the "DOT is not a suable entity." Katz v. City of New York, Dep't
of Transp., No. 94-cv-8319, 1996 WL 599668, at *7 (S.D.N.Y. Oct.
17, 1996). The plaintiff concedes this point. Pl.'s Memo., ECF
No. 29, at 2. Accordingly, the DOT is dismissed from this
action, and the plaintiff may proceed only against the City.

#### B. Negligence Claims

The City moves to dismiss the plaintiff's negligence claim
for failure to comply with state-law requirements regarding the

filing of a notice of claim. Under New York law, a plaintiff who seeks to bring tort claims against the City of New York must serve a timely notice of claim on the City before filing suit. N.Y. Gen. Mun. L. §§ 50-e(1)(a), 50-i(1); see, e.g., Katz, 1996 WL 599668, at *12 (dismissing claims against the City that were "grounded in tort" for failure to comply with "notice of claim requirements"). The plaintiff concedes that the "[n]egligence claim is improper because there was no timely notice of claim." Pl.'s Memo. at 2. Therefore, the defendant's motion to dismiss the plaintiff's negligence claim is **granted**.

### IV. Timeliness Issues

#### A. Title VII and ADA Claims

The City moves to dismiss the plaintiff's federal claims under Title VII and the ADA to the extent that those claims are based on alleged misconduct predating February 26, 2020. The City argues that such claims are time-barred because they arise out of alleged events that took place more than 300 days before the filing of the plaintiff's EEOC charge.

Both Title VII and the ADA establish certain prerequisites that a plaintiff must satisfy before bringing claims in court based on alleged acts of discrimination or retaliation. See 42 U.S.C. § 2000e-5(e)(1) (Title VII prerequisites); id. § 12117(a) (incorporating the Title VII prerequisites into the ADA). "In New York and other states with fair employment agencies," these

11

prerequisites include filing an EEOC charge "within 300 days of the alleged discriminatory [or retaliatory] acts." Gaston v. N.Y.C. Dep't of Health Off. of Chief Med. Exam'r, 432 F. Supp. 2d 321, 327 (S.D.N.Y. 2006); see also Hoffman v. Williamsville Sch. Dist., 443 F. App'x 647, 649-50 (2d Cir. 2011) (noting that the same 300-day window applies to claims under Title VII and the ADA). Thus, an alleged discriminatory or retaliatory act is actionable under Title VII or the ADA only if the act occurred within 300 days of the date that the EEOC charge was filed. See Hoffman, 443 F. App'x at 649 (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)).

An exception to this rule arises under the "continuing violation doctrine, . . . which holds that if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Isbell v. City of New York, 316 F. Supp. 3d 571, 585 (S.D.N.Y. 2018). To qualify for this exception, the plaintiff must allege that "at least one of the discriminatory acts furthering the alleged policy of discrimination occurred within the limitations period." Id. at 585-86. However, "a series of discrete but related acts of discrimination" does not "warrant application of the continuing violations doctrine." Id. at 586.

In this case, the plaintiff filed her EEOC charge on December 22, 2020.[4] See Choi Decl, Ex. 1, ECF No. 26-1 ("December 22, 2020 EEOC Charge"), at 1. Accordingly, the plaintiff's ADA and Title VII claims of discrimination and retaliation are time-barred to the extent they rely on alleged conduct that occurred before February 26, 2020, the date 300 days before the EEOC charge was filed. For example, this time bar applies to the three alleged assaults, which allegedly occurred in March 2017 (Worker 1), in 2018 (Worker 2), and on January 21, 2020 (Worker 3), see Compl. ¶¶ 13, 19, 24, as well as to the alleged August 2019 incident in which the plaintiff was asked to clean a man's truck, id. ¶ 23. The Court's analysis of these federal claims will consider only the alleged acts of discrimination or retaliation that took place after February 26, 2020.

However, the alleged misconduct predating February 26, 2020 (including, among other events, the three assaults and the truck incident) may be considered in connection with the plaintiff's hostile work environment claim under the "continuing violation"

---

[4] The defendant attached the plaintiff's December 22, 2020 EEOC Charge to its motion to dismiss. The Court may properly consider the date on the EEOC charge because the EEOC charge was incorporated by reference into the amended complaint and is integral to the plaintiff's claims of discrimination and retaliation. See Compl. ¶ 5; see also DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); Percy v. New York (Hudson Valley DDSO), 264 F. Supp. 3d 574, 586 n.8 (S.D.N.Y. 2017) (collecting cases where courts considered EEOC charges on motions to dismiss in connection with discrimination claims).

doctrine. See, e.g., Isbell, 316 F. Supp. 3d at 586; see also

Bermudez v. City of New York, 783 F. Supp. 2d 560, 582 (S.D.N.Y.

2011). "A charge alleging a hostile work environment claim . . .

will not be time barred so long as all acts which constitute the

claim are part of the same unlawful employment practice and at

least one act falls within the time period." Nat'l R.R. Passenger

Corp. v. Morgan, 536 U.S. 101, 122 (2002). Because the plaintiff

has alleged a course of mistreatment that includes at least some

conduct postdating the February 26, 2020 cutoff date,[5] the time

bar discussed above does not apply to the plaintiff's federal

hostile work environment claims, and the Court's analysis of

these claims takes into account all of the relevant allegations

in the amended complaint.

### B. NYSHRL and NYCHRL Claims

Next, the City moves to dismiss the plaintiff's claims

under the NYSHRL and the NYCHRL to the extent that those claims

are based on alleged misconduct predating March 28, 2019. The

City argues that such claims are time-barred pursuant to the

applicable statutes of limitations under state and local law.

---

[5] For example, the plaintiff alleges that she was "harassed and
threatened by her supervisor" and accused of "minor violations" in
2021 and thereafter. Compl. ¶¶ 48, 49. Moreover, because the alleged
assault by Worker 3 occurred in late January 2020, see Compl. ¶ 24, it
is reasonable to infer that many of the alleged events related to that
assault (for example, the DOT's rejection of the plaintiff's 19
separate requests to transfer away from Worker 3) postdated February
26, 2020. See id. ¶¶ 28-31.

The plaintiff's NYSHRL and NYCHRL claims in this case are subject to a three-year statute of limitations. See, e.g., Akhtab v. BCBG Max Azria Grp. Inc., No. 11-cv-4567, 2011 WL 4888799, at *1 (S.D.N.Y. Oct. 13, 2011); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Because the plaintiff commenced this action on March 28, 2022, see ECF No. 6, the plaintiff's NYSHRL and NYCHRL claims are time-barred to the extent they rely on alleged conduct predating March 28, 2019 (for example, the assaults by Worker 1 and Worker 2). Thus, the Court's analysis of the discrimination and retaliation claims under the NYSHRL and the NYCHRL will rely only on alleged acts of discrimination or retaliation that took place after March 28, 2019. However, for the reasons set forth above with regard to the federal hostile work environment claims, the Court may consider alleged conduct that took place before March 28, 2019 in connection with the NYSHRL and NYCHRL hostile work environment claims. See Bermudez, 783 F. Supp. 2d at 582 (noting that the "continuing-violation exception is applied in the same way whether the claim is under federal, state, or city law," and applying the exception to NYSHRL and NYCHRL hostile work environment claims).

### V. Disability Discrimination

Next, the City argues that the plaintiff has failed to state a claim of disability discrimination pursuant to the ADA, the NYSHRL, and the NYCHRL, all of which prohibit employers from

15

discriminating against employees because of a disability. See 42
U.S.C. § 12112(a) ("No covered entity shall discriminate against
a qualified individual on the basis of disability . . . ."); N.Y.
Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a). The ADA
claim is considered first.

Disability discrimination claims under the ADA "may be
brought under a theory of adverse employment action or of failure
to provide reasonable accommodation." Piligian v. Icahn Sch. of
Med. at Mount Sinai, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020). In
this case, the plaintiff alleges disability discrimination based
solely on a failure-to-accommodate theory. See Pl.'s Opp'n at 10
(arguing that the plaintiff has adequately alleged a claim for
"failure to accommodate"). To state a claim under the ADA based
on a failure-to-accommodate theory, the plaintiff must plausibly
allege that: (1) the plaintiff "is a person with a disability" as
defined in the ADA; (2) "an employer covered by the statute had
notice of [the] disability"; (3) "with reasonable accommodation,
[the] plaintiff could perform the essential functions of the job
at issue"; and (4) the covered employer "refused to make such
accommodations." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184
(2d Cir. 2006). The City argues that the plaintiff in this case
has not pleaded a "disability" within the meaning of the ADA, and
also that the plaintiff has not adequately alleged the DOT's

refusal to provide a reasonable accommodation. Def.'s Memo., ECF No. 25, at 8, 10.[6] Both arguments lack merit.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "Major life activities" include, among others, "walking, standing, lifting, bending," "performing manual tasks," and "working." Id. § 12102(2)(A). The ADA Amendments Act of 2008 and its implementing regulations make clear that the term "substantially limits" is "not meant to be a demanding standard," and that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." Id. § 1630.2(j)(1)(ii).

---

[6] The City also argues that the plaintiff "cannot demonstrate that she suffered from an adverse employment action" in connection with her claims of disability discrimination. Def.'s Memo. at 10. It is unnecessary to address this argument because the plaintiff's disability discrimination claims rely only on a "failure to provide reasonable accommodation" theory, not on an "adverse employment action" theory. Piligian, 490 F. Supp. 3d at 716. To the extent the plaintiff also intended to bring her disability discrimination claims under an "adverse employment action" theory, she has failed to address the City's argument that she did not plausibly allege an "adverse employment action" in connection with her disability, and accordingly, the plaintiff has abandoned that theory. See Wang v. Cloopen Grp. Holding Ltd., --- F. Supp. 3d ---, No. 21-cv-10610, 2023 WL 2534599, at *11 n.6 (S.D.N.Y. Mar. 16, 2023) (collecting cases where courts in this Circuit treated an argument or claim as waived or forfeited because the plaintiff failed to address the relevant argument or claim in response to a motion to dismiss).

The City contends that the plaintiff's torn rotator cuff and broken hip do not qualify as "disabilities" under the ADA because the plaintiff has failed to "allege how these injuries substantially limit one or more major life activities." Def.'s Memo. at 8-9. At this juncture, the defendant's argument is not persuasive. The plaintiff's allegations suggest that her torn rotator cuff and broken hip resulted in serious constraints on her ability to engage in certain physical tasks related to her work, including lifting and standing for extended periods of time. See, e.g., Compl. ¶¶ 37-38 (the plaintiff endured "exacerbat[ed]" pain when she "had to continue to lift heavy items" after tearing her rotator cuff); id. ¶ 50 (plaintiff suffered additional injury as a result of "stand[ing] all day on a broken hip"); see also id. ¶ 42 (the plaintiff's injuries "caused significant restrictions [of] her physical ability"). These allegations support a plausible inference that the plaintiff's injuries "substantially limited" her ability to work and perform other "major life activities." At the very least, the amended complaint raises an issue of fact on this point. See Parada v. Banco Industrial de Venez., C.A., 753 F.3d 62, 69-70 (2d Cir. 2014) (noting that whether an impairment "substantially limits" a major life activity is a "fact-specific inquiry" that depends "on the totality of the circumstances"). Accordingly, the plaintiff's ADA claim cannot be dismissed for failure to plead a disability.

18

The argument that the plaintiff has failed to allege a refusal to provide a reasonable accommodation is also unavailing. The plaintiff alleges that she made multiple requests for a "change in [her] duties and responsibilities" after she tore her rotator cuff in February 2021, but the DOT did "not offer[]" any such change; instead, the plaintiff "had to continue to lift heavy items[,] exacerbating her injury." Id. ¶ 38. While the DOT eventually gave the plaintiff three weeks off, the DOT "refused to change or modify her duties" upon her return. Id. ¶ 39. The plaintiff alleges that she made additional requests for a "change in duties or transfer to another department" after she broke her hip in March 2021, but the DOT "summarily" rejected these requests, and the plaintiff alleges that she was told that "management does not care what the doctor say[s], [the plaintiff] is going to do the work or be fired." Id. ¶¶ 42, 43, 45. It was not until after the plaintiff obtained counsel in August 2021 that the DOT instructed her to fill out the required paperwork for an accommodation, id. at ¶ 47, and the first purported accommodation that it granted "caused additional injury to [the] [p]laintiff" because "she had to stand all day on a broken hip," id. ¶ 50. The plaintiff alleges that she did not receive a "proper reasonable accommodation" until February 22, 2022. Id. ¶ 51.

These allegations support a plausible inference that the DOT refused to provide the plaintiff with a reasonable accommodation.

The plaintiff did not receive a proper accommodation until at least six months after she filled out the necessary paperwork in August 2021 -- and it is reasonable to infer that the DOT was on notice of the plaintiff's alleged disability many months earlier, given the plaintiff's allegations that she made multiple requests for an accommodation after her injuries in February and March 2021. This delay, coupled with the plaintiff's other allegations about how the DOT treated her during the accommodations process, permits an inference that the DOT "refused to make [reasonable] accommodations." Graves, 457 F.3d at 184.

In any event, the reasonableness of an accommodation "is a fact-specific inquiry and must be made on a case-by-case basis." Lewis v. Livingston Cnty. Ctr. for Nursing & Rehab., 30 F. Supp. 3d 196, 210 (W.D.N.Y. 2014). "Accordingly, such determinations are better reserved for summary judgment or trial rather than the pleading stage." Id. at 211 (collecting cases); see Peay v. Admin. for Children's Servs., No. 17-cv-4562, 2018 WL 2417848, at *6 (S.D.N.Y. May 29, 2018) (denying motion to dismiss where "there [was] an issue of fact whether preventing [the plaintiff] from taking a meal break so that she could take . . . medication constituted a failure to accommodate her disability"). In this case, at the very least, the plaintiff's allegations raise issues of fact as to whether the DOT's actions in response to her

alleged disability constituted a failure to accommodate. Thus, it would be inappropriate to dismiss the ADA claim at this time.

The plaintiff also brings a state-law claim of disability discrimination under the NYSHRL. Courts evaluate ADA and NYSHRL claims of disability discrimination based on an alleged failure to accommodate "under the same standard."[7] Baker v. MTA Bus Co., No. 18-cv-12231, 2023 WL 4896686, at *27 n.8 (S.D.N.Y. Aug. 1, 2023); Piligian, 490 F. Supp. 3d at 716. Thus, the plaintiff's NYSHRL claim survives the motion to dismiss for substantially the same reasons set forth with regard to the plaintiff's ADA claim.

That leaves the plaintiff's disability discrimination claim under the NYCHRL. "[C]ourts must analyze NYCRHL claims separately and independently from any federal and state law claims." Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 109 (2d Cir. 2013). The Court of Appeals for the Second Circuit has explained that the NYCHRL establishes a "one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." Id. Thus, the NYCHRL "creates a lower threshold for actionable

---

[7] "One key difference between the NYSHRL and the ADA is that the NYSHRL has a broader definition of disability than does the ADA[,] in that it does not require any showing that the disability substantially limits a major life activity." Kirkland-Hudson v. Mount Vernon City Sch. Dist., --- F. Supp. 3d ---, No. 21-cv-695, 2023 WL 2691622, at *20 n.6 (S.D.N.Y. Mar. 29, 2023). In this case, the City concedes that the plaintiff's alleged "injuries may fit the broader definition[] of a disability" under both the NYSHRL and the NYCHRL. Def.'s Memo. at 9.

conduct and must be construed liberally in favor of discrimination plaintiffs, meaning that a defendant may be liable under the NYCHRL but not under state or federal statutes." <u>Piligian</u>, 490 F. Supp. 3d at 717. Because "the NYCHRL is more protective than its state and federal counterparts," <u>Limauro v. Consol. Edison Co. of N.Y., Inc.</u>, No. 20-cv-3558, 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021), and because the plaintiff in this case has alleged sufficient facts to proceed with her ADA and NYSHRL claims, the NYCHRL claim for disability discrimination also survives the motion to dismiss.

In short, the City's motion to dismiss the plaintiff's claims of disability discrimination pursuant to the ADA, NYSHRL, and NYCHRL is **denied.**

### VI. Hostile Work Environment

The City also moves to dismiss the plaintiff's hostile work environment claims under the ADA, Title VII, the NYSHRL, and the NYCHRL, arguing that the plaintiff "fails to plausibly plead that she was subjected to a hostile work environment on the basis of her gender or disability." Def.'s Memo. at 13.

While courts in this District previously assumed without deciding that plaintiffs could bring hostile work environment claims under the ADA, the Court of Appeals for the Second Circuit has confirmed that such claims are cognizable. <u>See</u> <u>Fox v. Costco Wholesale Corp.</u>, 918 F.3d 65, 74 (2d Cir. 2019). To state a claim

22

of hostile work environment under either Title VII or the ADA,
the plaintiff "must plead facts that would tend to show" that:
(1) the conduct at issue is "objectively severe or pervasive,"
such that a "reasonable person" would find the environment to be
"hostile or abusive"; (2) the plaintiff "subjectively perceives
[the environment] as hostile or abusive"; and (3) the conduct at
issue occurred "because of" the plaintiff's protected trait -- in
this case, the plaintiff's gender (Title VII) or disability (ADA).
Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam);
see Fox, 918 F.3d at 74 (applying Title VII standards to an ADA
hostile work environment claim).

Historically, the same standard also applied to NYSHRL
hostile work environment claims. However, the NYSHRL was amended
in 2019 to "eliminate[] the 'severe and pervasive'" requirement.
Tortorici v. Bus-Tev, LLC, No. 17-cv-7507, 2021 WL 4177209, at *13
(S.D.N.Y. Sept. 14, 2021) (citing N.Y. Exec. Law § 300). Thus, to
state a hostile work environment claim based on conduct postdating
the 2019 amendments, a plaintiff must plausibly allege "that he
or she was subjected to inferior terms, conditions, or privileges
of employment because of the individual's membership in one or more
protected categories." Id.; Alvarado v. United Hospice, Inc., 631
F. Supp. 3d 89, 119 n.16 (S.D.N.Y. 2022).

Finally, under the liberal standards of the NYCHRL, a
hostile work environment plaintiff "need only [allege] that [the

23

plaintiff] was treated 'less well' than other employees because of [a] protected characteristic." <u>Tortorici</u>, 2021 WL 4177209, at *13 (quoting <u>Mihalik</u>, 715 F.3d at 110).

To the extent the plaintiff alleges that she was subjected to a hostile work environment based on her disability, those claims must be dismissed. As an initial matter, the plaintiff devotes the entirety of her response on the hostile work environment claim to her allegations of gender-based misconduct, without any suggestion that certain acts were directed at her because of her disability (indeed, the plaintiff's hostile work environment arguments do not mention the alleged disability at all). <u>See</u> Pl.'s Opp'n at 7-8. Because the plaintiff has failed to respond to the City's arguments regarding the disability-based claims of hostile work environment, the plaintiff has abandoned any such claims. <u>See</u> <u>Wang v. Cloopen Grp. Holding Ltd.</u>, --- F. Supp. 3d ---, No. 21-cv-10610, 2023 WL 2534599, at *11 n.6 (S.D.N.Y. Mar. 16, 2023) (collecting cases). In any event, the plaintiff's allegations are insufficient under any standard to permit an inference that the plaintiff was subjected to a hostile work environment because of her disability. For these reasons, any claims of disability-based hostile work environment under the ADA, the NYSHRL, and the NYCHRL must be dismissed.

A different conclusion is warranted with respect to the plaintiff's gender-based hostile work environment claims under

Title VII, the NYSHRL, and the NYCHRL. The City's only argument
for dismissal of these claims is that the plaintiff has failed to
"plead that she was subjected to a hostile work environment on the
basis of her gender." Def.'s Memo. at 13. But that argument lacks
merit. The Title VII hostile work environment inquiry looks to the
"totality of the circumstances," and it is well-established that
"facially sex-neutral incidents" may be "included . . . among the
totality of the circumstances that courts consider in any hostile
work environment claim, so long as a reasonable fact-finder could
conclude that they were, in fact, based on sex." Kaytor v. Elec.
Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010). In this case, the
plaintiff has alleged a course of conduct that is sufficient, when
viewed as a whole, to permit an inference of pervasive hostility
and mistreatment directed at the plaintiff because of her gender.

     The plaintiff specifically alleges that she was assaulted by
male co-workers on three occasions. The first of those assaults,
in which Worker 1 "massag[ed]" the plaintiff's buttocks, Compl.
¶ 13, was plainly an overt sexual act motivated by the plaintiff's
gender, after which Worker 1 approached the plaintiff from behind
and made the threatening statement, "I'm never going to be that
far from you." Id. ¶ 17. At the time of the sexual assault, at
least two other female employees had already complained about
Worker 1's conduct to DOT management, id. ¶ 14, and "[i]t took
nine months and multiple complaints" against Worker 1 before he

was terminated, id. ¶ 16. The plaintiff was then assaulted on two other occasions, one in which Worker 2 "head-butted" her, id. ¶ 19, and another in which Worker 3 "shoved [her] against the wall, choked her," and "scream[ed]" in her face, id. ¶ 24. The plaintiff alleges that she reported both incidents, but Worker 2 was "promoted to supervisor" instead of "punished." Id. ¶ 21. And after the incident involving Worker 3, the plaintiff and Worker 3 remained at the same "job sites, allowing Worker 3 the opportunity to continue to harass her," id. ¶ 28, and each of her 19 requests to transfer away from Worker 3 were denied, id. ¶ 29.

The plaintiff alleges other incidents consistent with this pattern of mistreatment. See, e.g., id. ¶ 25 (Worker 3 "continued to make aggressive comments [to the plaintiff], physically tower over her, and threaten her"); see also id. ¶ 48 (the plaintiff was "harassed and threatened by her supervisor"); id. ¶ 49 (the DOT continued to "writ[e] up" the plaintiff for "minor violations" without any justification for doing so). Moreover, the plaintiff's allegations permit an inference that her complaints to the DOT about mistreatment by male co-workers -- as well as similar complaints made by other female employees -- were often met with skepticism and indifference, and that the complained-of mistreatment was repeatedly minimized or tolerated.[8] When the totality of these

---

[8] See, e.g., Compl. ¶ 18 (the DOT told the plaintiff that Worker 1's misconduct was not "as severe" as she had claimed); id. ¶ 20 (after the

alleged circumstances are considered, the amended complaint supports an inference that the plaintiff was subjected to a hostile work environment because of her gender. Thus, the plaintiff has adequately alleged a Title VII hostile work environment claim. Furthermore, because the plaintiff has stated a claim under Title VII, she has also stated a hostile work environment claim under both the NYSHRL and the NYCHRL.[9]

In sum, to the extent the plaintiff brings hostile work environment claims under the ADA, the NYSHRL, and the NYCHRL based on her disability, the defendant's motion to dismiss those claims is **granted**. However, the motion to dismiss is **denied** with respect

---

plaintiff reported the assault by Worker 2, a DOT EEO Officer kept asking her, "[A]re you sure?"); id. ¶¶ 29-31 (the Deputy Commissioner of the DOT denied 19 requests to transfer away from Worker 3 without explanation, even throwing one such request "in the trash"); id. ¶ 32 (after an "incomplete" investigation, the plaintiff was instructed to pay restitution to Worker 3, her attacker); id. ¶ 33 (after witnesses corroborated the assault by Worker 3, a DOT investigator told the plaintiff to "let it go"); see also id. ¶ 34 (the DOT "attempt[ed] to downplay the severity of incidents" and persuade "victims to . . . voluntarily dismiss their complaints"); id. ¶ 14 ("No action was taken" in response to other female employees' complaints against Worker 1).

[9] The 2019 amendments to the NYSHRL were "not retroactive, meaning that the 'severe and pervasive' standard still applies to claims arising from conduct predating the effective date of the amendments." Tortorici, 2021 WL 4177209, at *13. In light of the continuing violation doctrine, the alleged misconduct underlying the plaintiff's hostile work environment claims in this case spans the time period both before and after the 2019 amendments. However, because the plaintiff has adequately pleaded a Title VII claim under the "severe and pervasive" standard, it is not necessary to address whether that standard or the newer (and broader) standard would apply to the plaintiff's NYSHRL hostile work environment claim. Either way, the NYSHRL claim survives the motion to dismiss.

to the plaintiff's gender-based hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL.

### VII. Gender Discrimination

The City also argues that any gender discrimination claims under Title VII, the NYSHRL, and the NYCHRL must be dismissed. In response, the plaintiff argues that she has stated a claim for gender discrimination based on the three alleged instances of assault and the DOT's alleged dismissiveness of her complaints about those assaults. See Pl.'s Opp'n at 9-10.

For the reasons set forth above, the plaintiff's Title VII gender discrimination claim is time-barred to the extent that it arises out of the alleged assaults, all of which occurred before February 26, 2020. Likewise, any claims of gender discrimination under the NYSHRL and the NYCHRL are time-barred insofar as they arise out of the first two assaults, which predated March 28, 2019.

To avoid the application of these time bars, the plaintiff argues that the "continuing violation" doctrine applies because she has alleged a "policy and practice" of discrimination. Pl.'s Opp'n at 9, 14. However, that theory relies on the exact same allegations that support the plaintiff's hostile work environment claims -- and the alleged hostile work environment is itself a form of gender discrimination. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (explaining that "discrimination" under Title VII "includes requiring people to work in a discriminatorily

28

hostile or abusive environment"). The plaintiff has not alleged any factual basis for her gender discrimination claims (time-barred or otherwise) that is distinct from the allegations underlying her hostile work environment claims. Accordingly, any gender discrimination claims in this case must be dismissed as duplicative of the plaintiff's hostile work environment claims. See, e.g., Bermudez, 783 F. Supp. 2d at 590-92 (dismissing "gender discrimination claims" as "duplicative of [the plaintiff's] sexual harassment and hostile work environment claims"); Bethea v. City of New York, No. 11-cv-2347, 2014 WL 2616897, at *6 (E.D.N.Y. June 12, 2014) (dismissing gender discrimination claim where plaintiff pleaded a hostile work environment claim and failed to allege a "separate and distinct" basis for "gender discrimination").

Thus, the motion to dismiss is **granted** with respect to the plaintiff's gender discrimination claims under Title VII, the NYSHRL, and the NYCHRL.

## VIII. Retaliation

Finally, the City moves to dismiss the plaintiff's retaliation claims under the ADA, Title VII, the NYSHRL, and the NYCHRL. To prevail on a claim of retaliation pursuant to the ADA or Title VII, a plaintiff must establish that (1) the plaintiff participated in a "protected activity" under the statute at issue (either the ADA or Title VII); (2) "the defendant knew of the protected activity"; (3) the defendant subjected the plaintiff

29

to an "adverse" action; and (4) a "causal connection" existed "between the protected activity" and the adverse action. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (Title VII); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADA). Under this framework, a "[p]rotected activity is [an] action taken to protest or oppose statutorily prohibited discrimination." Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019).

At the pleadings stage, courts analyze NYSHRL retaliation claims under standards analogous to those applicable to Title VII retaliation claims. See, e.g., Craven v. City of New York, No. 19-cv-1486, 2020 WL 2765694, at *6 (S.D.N.Y. May 28, 2020); Cardwell v. Davis Polk & Wardwell LLP, No. 19-cv-10256, 2020 WL 6274826, at *30 (S.D.N.Y. Oct. 24, 2020). Meanwhile, the threshold for stating an NYCHRL retaliation claim is lower. Cardwell, 2020 WL 6274826, at *30; see Mestecky v. N.Y.C. Dep't of Educ., 791 F. App'x 236, 239 (2d Cir. 2019) ("NYCHRL's retaliation provision is broader than Title VII's."). Under the NYCHRL, a retaliation plaintiff must allege that "she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112.

The City argues that the plaintiff's retaliation claims must be dismissed because (1) none of the alleged retaliatory actions were "materially adverse," and (2) the plaintiff has not alleged

30

any causal connection between her participation in a protected activity and those actions. Dismissal is warranted with respect to the ADA retaliation claim (and any parallel claims under the NYSHRL and the NYCHRL), but not with respect to the Title VII retaliation claim (and any parallel NYSHRL and NYCHRL claims).

It is fundamental that in order to state an ADA retaliation claim, a plaintiff must allege retaliation in connection with "an activity protected by the ADA" -- that is, an activity undertaken to oppose or protest discrimination on the basis of a disability. Treglia, 313 F.3d at 719 (emphasis added). However, in this case, nearly all of the plaintiff's alleged "protected activities" were undertaken to protest or oppose acts of gender-based misconduct, not disability discrimination -- and accordingly, those actions would be protected under Title VII, but not under the ADA.[10] See 42 U.S.C. § 2000e-2(a) (Title VII provision barring discrimination "because of [an] individual's . . . sex"); id. § 2000e-3 (Title VII provision barring retaliation against individuals who have

---

[10] These activities include the plaintiff's complaints to management in which she reported assaults by male DOT employees, see Compl. ¶¶ 15, 20, 28, as well as the plaintiff's act of submitting a charge to the EEOC, id. at ¶ 5; see Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) ("protected activities" under Title VII include, among others, "the filing of formal charges of discrimination" barred by Title VII, as well as "making complaints to management" regarding such discrimination). The plaintiff's EEOC charge focused solely on allegations of gender-based misconduct and did not include any allegations of disability discrimination. See Dec. 22, 2020 EEOC Charge.

"opposed any practice made . . . unlawful" under Title VII's antidiscrimination provision).

The plaintiff's only alleged protected activity under the ADA was her pursuit of an accommodation for her disability. See Rodriguez v. Atria Sr. Living Grp., Inc., 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) ("Requesting a reasonable accommodation of a disability is an ADA-protected activity."). However, the plaintiff does not adequately allege that any retaliatory action was taken against her because she requested a reasonable accommodation, or because she engaged in any other activity that could be construed as opposing or protesting disability discrimination. Nor does the plaintiff make such an argument in response to the City's motion to dismiss; instead, the plaintiff focuses solely on retaliation in connection with her complaints of gender-based mistreatment.[11] Because the plaintiff does not plausibly allege retaliation in connection with any activity undertaken to protest or oppose disability discrimination, the ADA retaliation claim (and the parallel NYSHRL and NYCHRL retaliation claims) are dismissed.

_____

[11] While the plaintiff's retaliation arguments do discuss some of the alleged mistreatment that she faced in connection with her disability, the plaintiff argues only that such mistreatment was part of the DOT's efforts to retaliate against her for filing her "EEOC charge" and for making her "complaints" of gender-based misconduct. See Pl.'s Opp'n at 13-14. In other words, the plaintiff frames this disability-related mistreatment as retaliation for activities protected under Title VII. That is very different from an argument that the plaintiff faced retaliation because she engaged in ADA-protected activity, such as protesting disability discrimination or requesting an accommodation.

In contrast, the plaintiff has adequately pleaded her Title VII retaliation claim. The City correctly notes that in order to prevail on a retaliation claim, a plaintiff must establish that the alleged retaliatory action "would have been materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); Hicks, 593 F.3d at 165. But the City's argument that the plaintiff has failed to plead such an action is unpersuasive. An employer's actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 57. This standard is an objective one, but "[c]ontext matters," and the analysis requires careful attention to the "surrounding circumstances." Hicks, 593 F.3d at 165 (quoting White, 548 U.S. at 69). Furthermore, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." Id.

In this case, the plaintiff alleges a series of actions taken against her that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."[12] White, 548

---

[12] For purposes of evaluating the Title VII retaliation claim, the Court focuses only on events that reasonably could have post-dated February 26, 2020, the relevant starting point for allegations that fall within the applicable limitations period. Because Worker 3's assault of the plaintiff is alleged to have occurred in late January 2020, it is reasonable to infer that many of the alleged subsequent events, including the alleged acts of retaliation, occurred within the

U.S. at 57. For example, after the plaintiff filed her complaint
with DOT management regarding the January 2020 assault by Worker
3, the plaintiff was placed "on the same job sites" as Worker 3,
and DOT management denied 19 separate requests by the plaintiff
for a transfer to a new unit so that she could avoid Worker 3.
Compl. ¶¶ 28, 29. The plaintiff allegedly watched as the DOT's
Deputy Commissioner took one of those transfer requests and threw
it "in the trash." Id. ¶ 30. Not long after, an internal DOT office
told the plaintiff that she should "pay restitution to Worker 3,"
even though Worker 3 had physically assaulted her. Id. ¶ 32.
Later, the plaintiff was ordered to comb through the garbage and
separate out discarded food, a "humilitiat[ing] and degrad[ing]
task" that was not part of her duties. Id. ¶ 35. The plaintiff
also alleges that she has been "written up for minor violations"
for no reason, and she argues that DOT personnel refused to grant
her requests for an accommodation because she complained about her
mistreatment in her December 22, 2020 EEOC Charge. Id. ¶ 49; Pl.'s
Opp'n at 13.

At the pleadings stage, it is fair to infer that these
alleged actions "might have dissuaded a reasonable worker from
making or supporting a charge of discrimination." White, 548 U.S.

_____

limitations period and may be considered on this motion to dismiss.
The precise timing of those events is a question of fact that cannot
be resolved absent a full evidentiary record.

at 68. Accordingly, the plaintiff has plausibly alleged a materially adverse action.

With respect to the City's second argument, it would be inappropriate at this stage to dismiss the plaintiff's Title VII retaliation claim for failure to allege any causal connection between her protected activities and the adverse actions taken against her. The City argues that the temporal distance between the alleged protected activities and the adverse actions in this case is "far too remote . . . to establish a causal connection." Def.'s Memo. at 15. While it is true that a plaintiff may show causation "indirectly through temporal proximity," Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013), that is not the only way of alleging or proving a causal connection. And in this case, "an inference of causation is more easily drawn when one considers the [alleged] facts as a whole." Duplan v. City of New York, 888 F.3d 612, 626 (2d Cir. 2018). The plaintiff alleges a series of adverse actions taken against her after she reported the January 2020 assault by Worker 3 (for example, her placement at Worker 3's job sites, the denials of her 19 transfer requests, the trash incident), and again after she filed her December 22, 2020 EEOC charge (for example, the denials of her accommodation requests and the write-ups for minor violations). Furthermore, these actions allegedly "occurred against a backdrop of continuing antagonism" directed at the plaintiff. Craven, 2020 WL 2765694, at

35

*6 (quoting Duplan, 888 F.3d at 625). While the precise timing of
the adverse actions remains unclear, the plaintiff's allegations
are enough to support an inference that the plaintiff was subjected
to adverse treatment because of her protected activity. At this
early stage, "it would be premature for the Court [to] reject the
alleged causal connection between the protected activity and the
adverse employment action" on the grounds advanced by the City.
Lowe v. Hous. Works, Inc., No. 11-cv-9233, 2013 WL 2248757, at
*10 (S.D.N.Y. May 15, 2013); see, e.g., Craven, 2020 WL 2765694,
at *6 (allegations of retaliation were "sufficient to survive" a
motion to dismiss where adverse action occurred six months after
protected activity, and employer subjected plaintiff to other
alleged "antagonism during the intervening period").

Because the plaintiff has adequately alleged a Title VII
claim of retaliation, her parallel retaliation claims under the
NYSHRL and the NYCHRL also withstand the motion to dismiss. See,
e.g., Craven, 2020 WL 2765694, at *6-7 (denying motion to dismiss
Title VII, NYSHRL, and NYCHRL retaliation claims after concluding
that plaintiff stated a claim under Title VII standards). Indeed,
many of the allegations that are time-barred for purposes of the
plaintiff's Title VII claim may be considered in connection with
the NYSHRL and NYCHRL claims, and these include the plaintiff's
allegations that she was labeled a "troubled employee" and forced
to clean another man's truck in retaliation for her complaints

36

against male co-workers. See Compl. ¶¶ 22-23. Such allegations reinforce the conclusion that the plaintiff has stated retaliation claims under the NYSHRL and the NYCHRL.

In short, the motion to dismiss is **granted** to the extent it concerns the plaintiff's ADA retaliation claim and any parallel claims under the NYSHRL and the NYCHRL. The motion is **denied** with respect to the plaintiff's Title VII retaliation claim and any parallel claims under the NYSHRL and the NYCHRL.

                                  * * *

In sum, the motion to dismiss is **denied** with respect to the following claims: (1) the disability discrimination claims under the ADA, the NYSRHL, and the NYCHRL, based on a failure to provide reasonable accommodations; (2) the Title VII retaliation claim and the parallel NYSHRL and NYCHRL gender-based retaliation claims; and (3) the Title VII hostile work environment claim and the parallel NYSHRL and NYCHRL gender-based hostile work environment claims. With the exception of the hostile work environment claims, for which no time bar applies, the federal claims survive only to the extent they arise out of alleged acts postdating February 26, 2020, and the NYSHRL and NYCHRL claims survive only to the extent they arise out of alleged acts postdating March 28, 2019. The plaintiff may proceed with these claims only against the City, not against the DOT.

The motion to dismiss is **granted** with respect to the following claims: (1) the negligence claim; (2) the Title VII, NYSHRL, and NYCHRL gender discrimination claims; (3) the ADA retaliation claim and the parallel disability-based NYSHRL and NYCHRL retaliation claims; and (4) the ADA hostile work environment claim and the parallel NYSHRL and NYCHRL disability-based hostile work environment claims.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted in part** and **denied in part**. The Clerk is directed to terminate the DOT as a defendant in this case and to close ECF No. 24.

SO ORDERED.
Dated:      New York, New York
            September 5, 2023

                              _____
                              John G. Koeltl
                              United States District Judge