UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/14/25__

SIMONE SAMUELS,

          Plaintiff,

    -against-

CITY OF NEW YORK,

          Defendant.

22-CV-01904 (JAV) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Simone Samuels, a former employee of the New York City Department of Transportation (DOT), alleges that the City of New York (City) failed to provide her with reasonable accommodations in a timely manner after a workplace injury, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq*.; the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 296(3)(a); and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-107(15). *See* First Amended Complaint (FAC) (Dkt. 20) ¶¶ 40-47. Now before the Court is the City's motion (Def. Mot.) (Dkt. 116) to strike plaintiff's expert disclosure concerning the testimony of one of her treating physicians, Dr. Louis Rose, and to preclude him from testifying as an expert.

For the reasons that follow, the City's motion will be granted in part. Because plaintiff's expert disclosure does not meet the standard of Fed. R. Civ. P. 26(a)(2)(C), Dr. Rose may not testify as an expert witness, but he may testify as a fact witness. In that capacity, he may offer opinions "regarding the patient's condition, diagnosis, treatment and prognosis," including opinions as to causation, but only if and to the extent his opinions are based on his own "observations of the patient during the period of consultation." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 214 (S.D.N.Y. 2021). Dr. Rose may not offer any opinions that are based, directly or indirectly, on "information provided by other physicians to whom the Plaintiff may

have been referred[.]" *Spencer v. Int'l Shoppes, Inc.*, 2011 WL 4383046, at *4 (E.D.N.Y. Sept. 20, 2011). Nor may he opine as to plaintiff's current medical condition or its causes. Further, before Dr. Rose may offer *any* opinion testimony, plaintiff must disclose all of her relevant medical records, including the records of her hip replacement surgery and post-surgical rehabilitation, as well as her allegations and testimony concerning the alleged malpractice committed by the surgeon who performed the hip replacement.

## I.    PLAINTIFF'S ALLEGATIONS

Plaintiff Samuels was employed as a construction worker at DOT. FAC ¶ 11. As relevant here, she alleges that her hip was injured as a result of a co-worker's negligent mishandling of equipment (an attenuator) on March 25, 2021. *Id.* ¶ 40. Although the injury "caused significant restrictions to her physical ability," *id.* ¶ 42, DOT rejected her initial requests for workplace accommodations. *Id.* ¶¶ 42-46. It was not until August 4, 2021 – after she obtained counsel – that "DOT finally instructed Plaintiff to fill out paperwork for an accommodation." *Id.* ¶ 47. On January 28, 2022, plaintiff "received a reasonable accommodation," but it was insufficient, as she "had to stand all day on a broken hip," which "caused additional injury." *Id.* ¶ 50. Finally, on February 22, 2022, plaintiff was given "100% desk duty." *Id.* ¶ 51. However, she alleges, the delay in providing her with a reasonable accommodation "caused immense pain and suffering and may have resulted in additional medical care and treatment." *Id.*

On September 9, 2023, the District Judge held that these allegations, taken as true, stated a claim for disability discrimination on a "failure-to-accommodate theory" under the ADA, the NYSHRL, and the NYCHRL. (Dkt. 34 at 16-22.) On October 30, 2023, the District Judge referred the case to me for general pretrial management. (Dkt. 41.)

## II.    THE ZELICOF LAWSUIT

On June 7, 2022 – fifteen months after her hip injury and four months after she was given desk duty – plaintiff underwent a right total hip arthroplasty (hip replacement), performed by Dr. Steven Zelicof, followed by a second surgery on June 10, 2022. On October 20, 2022, plaintiff sued Dr. Zelicof for medical malpractice, alleging that during the June 7 procedure he "injured the nerves that were in and around the surgical site," causing plaintiff to "suffer significant and disabling injuries as well as require prolonged care for same." Compl. ¶¶ 37, 46, *Samuels v. Zelicof*, Index No. 815587/2022E (N.Y. Sup. Ct., Bronx. Cnty. Oct. 20, 2022) (hereafter "Zelicof Compl."). Plaintiff alleges that she was left with a "permanent injury to the sciatic nerve," a "permanent injury to the distal lower extremity nerves," a "permanent loss of muscle function in the lower extremity," and "foot drop," all of which were "caused solely" by Dr. Zelicof's negligence. Zelicof Compl. ¶¶ 47-51. The malpractice action remains pending in state court.[1]

## III.    RELEVANT PROCEDURAL HISTORY

### A.    Fact Discovery

On December 14, 2023, during fact discovery in this action, defendant asked plaintiff to identify (and provide HIPAA-compliant releases for) all of her medical providers from 2015 to the present. (Dkt. 86-1 at ECF pp. 3-5.) In response, plaintiff did not identify either Dr. Rose or Dr. Zelicof. She first identified Dr. Rose (along with several other medical providers never previously disclosed) during her deposition on November 25, 2024. (Dkt. 86-3 at 91:3-18.) Additionally, plaintiff testified at deposition about her malpractice case. (*See* Dkt. 86-5 at ECF p. 5.) On January

---

[1] This Court takes judicial notice of the state court file in *Samuels v. Zelicof*, "not for the truth of the matters asserted" therein, "but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

8, 2025, defendant served plaintiff with requests for production (RFPs) seeking, *inter alia*, her deposition transcript and "pleadings filed" in the malpractice action, and her medical records from Dr. Rose. (Dkts. 86-4, 86-5.) On February 6, 2025, plaintiff objected to the malpractice-related RFPs on relevance grounds, and further responded that she did not possess any of the requested documents. (Dkt. 86-5 at ECF pp. 5-6.) Likewise, plaintiff stated that she did not possess any medical records from Dr. Rose. (*Id.* at ECF p. 12.) On March 26, 2025, plaintiff provided a release for those medical records, but improperly limited the release to the period January 1, 2017 to March 31, 2022. (*See* Dkt. 89 at 1; Dkt. 90 at 1.) On April 23 and May 22, 2025, the Court ordered plaintiff to provide valid, HIPAA-compliant releases for Dr. Rose (and the other providers first identified at deposition) covering January 1, 2016 to the present. (Dkts. 93, 103.)[2]

Fact discovery closed on June 30, 2025. (*See* Dkts. 105, 112.) That same day, plaintiff requested an expert discovery period, explaining that she intended to present expert testimony to counter defendant's "anticipated argument[]" that "Plaintiff was unable to perform the functions of her job" (Dkt. 112 at 1), and I issued the requested order, under which plaintiff's expert reports were due on July 31, 2025. (Dkt. 113.) On July 31, 2025, plaintiff requested an extension, explaining that her expert required "additional time to finish drafting the report." (Dkt. 114.) I granted the extension and issued a new expert scheduling order, under which plaintiff's expert disclosures were due on August 12, 2025; defendant's rebuttal expert disclosures were due on September 11, 2025; and all expert discovery, including expert depositions, was to close on September 29, 2025. (Dkt. 115.)

---

[2] It is not clear from the record before this Court whether defendant made any further efforts, after plaintiff's deposition, to obtain her medical records from Dr. Zelicof or the documents that it requested regarding *Samuels v. Zelicof*.

### B.    Expert Discovery

On August 12, 2025, plaintiff served the City with a one-page notice entitled "'Hybrid' Fact/Expert Witness Disclosure," signed by her counsel, attaching a letter signed by Dr. Rose. *See* Expert Discl. (Dkt. 116-1) at ECF pp. 2, 5.[3] In the notice, plaintiff advised that she intended to call Dr. Rose, pursuant to Fed. R. Civ. P. 26(a)(2)(C), to testify about four topics:

(1)    his treatment of Ms. Samuels between June 7, 2021 and December 19, 2022;

(2)    "that he requested an accommodation for the injuries she suffered at work";

(3)    "that Ms. Samuels did not receive this accommodation until approximately December 2021"; and

(4)    "that as a result of the failure to provide a reasonable accommodation, she spent six months aggravating her injury that ultimately made her unable to stand for long periods of time."

Exp. Discl. at ECF p. 2.

In his accompanying letter, Dr. Rose states that he performed his initial evaluation of plaintiff on June 7, 2021, after she was referred to him for "diagnostic imaging of her right hip and low back." Exp. Discl. at ECF p. 5. Dr. Rose saw plaintiff again on July 6, 2021, "to review testing," at which point he referred her to "joint specialist, Dr Zelicoff [sic] to discuss total hip replacement." *Id*.[4] On or about August 3, 2021, Dr. Rose requested "modifications of [plaintiff's] work duties, including, but not limited to, not climbing the attenuator and doing light duty." *Id*. Dr. Rose writes that "Ms. Samuels did not receive these accommodations until about December 2021," and opines that, due to the lack of accommodations, "she spent approximately six months

---

[3] Dr. Rose's letter is dated July 15, 2025, is addressed "to whom it may concern," is less than one page long, and contains two substantive paragraphs. This calls into question plaintiff's July 31 claim that her expert "needed additional time to finish drafting the report."

[4] Available public records, including the pleadings in plaintiff's malpractice lawsuit against Dr. Zelicof, spell his name with one "f."

aggravating her injury." *Id.* He further opines that "[t]he delay in providing a reasonable accommodation resulted in additional pain and injury that ultimately made her unable to stand for long periods of time." *Id.* Dr. Rose notes that after Ms. Samuels' hip replacement on June 7, 2022, she "required [a] second surgery" on June 10, 2022, and was then "admitted to Burke Rehab," where she "remained under the care of Dr Zelicoff[.]" *Id.*[5]

On August 27, 2025, defendant served additional RFPs on plaintiff, seeking communications between Dr. Rose and plaintiff (or her counsel); Dr. Rose's curriculum vitae; plaintiff's underlying medical records from Dr. Zelicof and Burke Rehab; and HIPAA-compliant releases for Dr. Zelicof and Burke Rehab. (Dkt. 123-1 at 5-6.)

On September 11, 2025, plaintiff served an "Amended 'Hybrid' Fact/Expert Witness Disclosure" (Amend. Exp. Discl.) (Dkt. 116-2), consisting of an amended notice, signed by plaintiff's counsel, attaching the same one-page letter from Dr. Rose. The amended notice is identical to the original, except for the addition of the following paragraph:

> Plaintiff intends to limit Dr. Rose's testimony in two ways. One, Dr. Rose's testimony will be limited to the time he treated Plaintiff, from June 7, 2021 until December 19, 2022. Two, Dr. Rose will **not** testify to the treatment she received from Dr. Zelicoff nor any other Doctor.

Amend. Exp. Discl. at ECF p. 2.

## IV.    THE MOTION TO STRIKE AND PRECLUDE

On September 12, 2025, the City filed its motion to strike plaintiff's expert disclosure and preclude Dr. Rose from testifying as an expert. Defendant contends that that some of the opinions that Dr. Rose proposes to provide would be impermissible under Fed. R. Evid. 702 even from a properly qualified witness who has provided adequate disclosures. For example, defendant asserts,

---

[5] Dr. Rose apparently does *not* intend to testify on the topic plaintiff identified when requesting an expert discovery period, namely, whether plaintiff "was unable to perform the functions of her job." (*See* Dkt. 112 at 1.)

Dr. Rose cannot testify that the DOT "failed to reasonably accommodate Plaintiff," because this is an "impermissible legal conclusion that must be excluded." Def. Mot. at 2. Additionally, plaintiff contends that Dr. Rose's proposed testimony about plaintiff's injury (and the aggravation of that injury) is irrelevant to this action, because "any claim for recovery stemming from an on the job injury is barred under the New York State Workers Compensation Law." *Id.*

Turning from the Federal Rules of Evidence to the Federal Rules of Civil Procedure, defendant argues that plaintiff's expert disclosures are "too cursory and vague" to satisfy even the relaxed standards of Fed. R. Civ. P. 26(a)(2)(C). Def. Mot. at 2-3. Therefore, defendant asserts, Dr. Rose should be limited to testifying about "information obtained through observation of Plaintiff during treatment," and precluded from offering opinion testimony about (for example) whether plaintiff's injury was aggravated "as a result of" DOT's alleged failure to timely provide her with reasonable accommodations *Id.* at 3. In any event, defendant argues, no medical expert may testify regarding causation until the plaintiff has disclosed "all of his or her medical records," which Ms. Samuels still had not done. *Id.*

On September 18, 2025, plaintiff cross-moved to close expert discovery, arguing that the City waived its right to such discovery by filing its motion without waiting for plaintiff to respond to its expert RFPs, without taking Dr. Rose's deposition, and without serving any rebuttal expert disclosure when due on September 11, 2025. Plaintiff also requested that the motion to strike be referred to the District Judge. (Dkt. 117 at 1-2.) Defendant opposed the cross-motion, arguing – in effect – that expert discovery should be extended, because Dr. Rose could not be deposed until plaintiff responded to the expert RFPs, and that once she did, it would not be possible to conduct Dr. Rose's deposition before September 29, 2025. (Dkt. 118 at 1.)

During a discovery conference on September 26, 2025, plaintiff's counsel offered to further limit the temporal scope of Dr. Rose's testimony to the period between June 7, 2021, when he first saw plaintiff, and the end of December 2021, when (according to Dr. Rose's letter) she received the requested accommodations.[6] Counsel confirmed that Dr. Rose was still expected to testify that plaintiff's injury was "aggravate[ed]" during that period, *see* Amend. Exp. Discl. at ECF p. 5, and that the aggravation (with accompanying pain) was caused by DOT's failure to provide the accommodations that he recommended. Counsel further confirmed that Dr. Rose was "aware of" plaintiff's medical records from Dr. Zelicof and Burke Rehab, but insisted that nothing in those records would be "the basis of his testimony," because the hip replacement did not take place until June 2022 and "we're not making the argument that this failure to reasonably accommodate caused the surgery."[7] Lastly, counsel confirmed that plaintiff had not yet produced her medical records from Dr. Zelicof or Burke Rehab (nor signed HIPAA released that would permit defendant to subpoena those records from the providers), but advised that he had "no problem providing the releases" if the Court deemed it necessary.

At the conclusion of the September 26 conference, I vacated the remaining expert discovery deadlines pending the outcome of defendant's motion to strike and preclude, set a briefing schedule for that motion, and denied the request to "refer" it back to the District Judge. (Dkt. 124.)

---

[6] Dr. Rose's letter is inconsistent with the pleadings on this point. As noted above, plaintiff alleges that she did not receive adequate accommodations until February 2022. FAC ¶ 51.

[7] In her operative pleading, plaintiff appears to make precisely that claim. *See* FAC ¶ 51 (alleging that the delay in providing her with a reasonable accommodation "caused immense pain and suffering and may have resulted in additional medical care and treatment."); *id.* ¶ 41 (alleging that she required a "hip replacement"). The Court therefore construes counsel's oral presentation as an offer to withdraw any such claim.

On October 10, 2025, plaintiff submitted her letter-brief opposing the motion to strike, arguing that her expert disclosures – including Dr. Rose's letter – were compliant with Rule 26(a)(2)(C), as "Defendant is clearly able to ascertain what topics Dr. Rose will testify on[.]" Pl. Opp. (Dkt. 125) at ECF pp. 2, 5. Plaintiff further argues that there is "no basis" for defendant's assumption that Dr. Rose "relie[d] on Dr. Zelicoff and Burke rehab to form his opinion," given that he personally examined plaintiff six times "prior to Defendants' providing a reasonable accommodation," which gave him "more than enough information . . . to formulate his opinions." *Id*. at ECF pp. 3-4.[8] Plaintiff assures the Court that Dr. Rose will "not be testifying to any legal conclusions" concerning the accommodations provided by DOT, but contends that he should be permitted to testify, as a fact witness, about the accommodations he requested on plaintiff's behalf, the "information he was provided by his client" as to when those accommodations were actually provided, and the "aggravation" of her injury during the interim. *Id*. at 4-5.

On October 22, 2025, the City submitted its reply letter-brief, clarifying that it "does not contest Dr. Rose's ability to testify as a fact witness," but reiterating that, as a fact witness, he should only be permitted to testify as "to his personal treatment of Plaintiff," not as to "causation," or as to "medical conditions and/or treatment that occurred outside of [his] personal treatment" of plaintiff. Def. Reply (Dkt. 126.) at 1.

---

[8] Elsewhere in her opposition letter, however, plaintiff argues strenuously that a treating physician may testify as an expert as to "matters beyond plaintiff's course of treatment, *i.e.*, information acquired from outside sources," Pl. Opp. at ECF p. 6 (quoting *McAfee v. Naqvi*, 2017 WL 3184171, at *4 (D. Conn. July 26, 2017)), and asserts that Dr. Rose's testimony will be based on "what he observed *and found out* during the course of his treatment[.]" *Id*. (emphasis added). The Court therefore remains uncertain as to whether Dr. Rose's proposed opinion testimony will rely, directly or indirectly, on information he "found out" from plaintiff's other medical providers, such as Dr. Zelicof.

## V.    STANDARDS

A treating physician may testify as a fact witness or – assuming proper disclosure is made – as an expert witness. *Ali v. Connick*, 2016 WL 3002403, at *7 (E.D.N.Y. May 23, 2016) (collecting cases). When testifying as a fact witness, the treating physician may provide an "explanation of treatment," including any "facts acquired *and* opinions formed during [his] personal consultation" with the plaintiff. *Id.* (quoting *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2013 WL 4046263, at *6 (E.D.N.Y. Aug. 8, 2013) (emphasis in original)). As part of an "explanation of treatment," the treating physician may "opine on 'causation, severity, disability, permanency and future impairments,'" without triggering the expert disclosure requirements of Rule 26(a)(2), but only if those opinions are based on the physician's personal knowledge from the consultation, *id.* (quoting *Puglisi*, 2013 WL 4046263, at *6), and were formed "during the period of consultation." *Rodriguez*, 535 F. Supp. 3d at 214.

When a treating physician's testimony "relies upon 'scientific, technical, or other specialized knowledge,'" or upon facts and evidence outside the scope of his own treatment (for example, medical records or reports supplied by another physician), his testimony is considered expert testimony, governed by Fed. R. Evid. 702, which requires disclosure under Rule 26(a)(2). *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 2014 WL 5757713, at *4 (S.D.N.Y. Nov. 5, 2014); *accord Rodriguez*, 535 F. Supp. 3d at 214; *Pierce v. City of New York*, 2017 WL 2623857, at *3 (E.D.N.Y. June 16, 2017). Rule 26(a)(2) provides for two types of expert disclosure. Under Rule 26(a)(2)(B), if an expert witness has been "retained or specially employed to provide expert testimony in the case," the party proposing to call that witness must serve a written report containing:

> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)     the facts or data considered by the witness in forming them;

(iii)    any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

In contrast, under Rule 26(a)(2)(C), if the expert witness as not been "retained or specially employed to provide expert testimony," the party proposing to call that witness need only serve a disclosure document that states:

(i)     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii)    a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

Whether a treating physician is considered an expert, subject to the disclosure requirements of Rule 26(a)(2)(B) or (C), "depends, not on his or her title as a 'treating physician,' but upon the nature of the testimony the physician intends to provide at trial." *In re World Trade Ctr.*, 2014 WL 5757713, at *3; *see also Pierce*, 2017 WL 2623857, at *3 (courts evaluate the appropriateness of the expert disclosure based on "the substance of the expected testimony").

To summarize, "treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was retained or specially

employed to provide expert testimony." *Ali*, 2016 WL 3002403, at *9 (internal quotations and citation omitted); *accord Austin v. Metro-N. Commuter R.R.*, 2023 WL 3317906, at *1 (S.D.N.Y. May 9, 2023); *Rodriguez*, 535 F. Supp. 3d at 214. Because the first category consists of testimony based solely on the facts that the physician learned through her treatment and observations of the plaintiff, it is considered factual testimony, as to which no Rule 26 disclosure is required (even though limited opinion testimony is permitted). *Pierce*, 2017 WL 2623857, at *3. The second category falls under the purview of Rule 26(a)(2)(C), requiring the abbreviated disclosure described therein, while the third category is governed by the more exacting disclosure requirements of Rule 26(a)(2)(B). *Id.*

Here, it is undisputed that Dr. Rose was not "retained or specially employed to provide expert testimony." Consequently, plaintiff was not required to serve a formal expert report in compliance with Rule 26(a)(2)(B). However, the parties dispute whether plaintiff's expert disclosure satisfies Rule 26(a)(2)(C), and therefore whether Dr. Rose may offer opinion testimony based on matters beyond his personal knowledge. In making this determination, "courts consider whether the subject disclosure helps the opposing party and the Court understand what the physician will offer *specifically* on the subject matter for which they were disclosed, in terms of facts and medical opinions." *Austin*, 2023 WL 3317906, at *1; *see also Olutosin v. Gunsett*, 2019 WL 5616889, at *3 (S.D.N.Y. Oct. 31, 2019) (Rule 26(a)(2)(C) requires more than "scant details"); *Kaganovich v. McDonough*, 547 F. Supp. 3d 248, 274 (E.D.N.Y. 2021) ("[U]ltimately, the question is whether the disclosure provides sufficient detail to permit defendants to prepare their defense.") (cleaned up). Treating physicians are properly precluded from providing expert testimony where the disclosure does not include "*specific facts* and more than bare minimum details of opinions formed therefrom." *Austin*, 2023 WL 3317906, at *1; *see also Kaganovich*, 547

F. Supp. 3d at 274-75 (to satisfy Rule 26(a)(2)(C), the expert must proffer more than "mere generalities" and "bare-minimum details").

## VI.    DISCUSSION

Plaintiff offers Dr. Rose as a "hybrid" witness to provide both fact testimony (as to his direct observations and treatment of plaintiff, including that he requested accommodations on her behalf) and opinion testimony as to the "aggravation" of plaintiff's injury, the cause of that aggravation, and the effect on plaintiff's ability to "stand for long periods of time." Amend. Exp. Discl. at ECF p. 2. As defendant concedes, *see* Def. Reply at 1, Dr. Rose may testify, as a fact witness, about his personal interactions with plaintiff between June 7, 2021 and the date on which he last examined or treated her.[9] He may also testify, as a fact witness, about the accommodations he requested on plaintiff's behalf, including when, how, and why he requested them.

As plaintiff concedes, Dr. Rose may *not* testify as to whether and when Ms. Samuels received "reasonable" accommodations. *See* Def. Opp. at ECF p. 4 ("It is ultimately up to the fact finder to determine whether Defendant's [sic] failed to reasonably accommodate."). Not only would such testimony be based on matters beyond Dr. Rose's personal knowledge; it would be impermissible even from a fully-qualified retained witness, because it would "plainly usurp the jury's role of resolving the ultimate legal conclusion at the heart of this case." *Olutosin*, 2019 WL 5616889, at *3 (precluding witness from testifying as to whether force used by prison guard was "excessive"); *see also Manzone v. Wal-Mart Stores, Inc.*, 2020 WL 5411483, at *5 (E.D.N.Y. Sept. 9, 2020) (precluding physician from testifying as to the "ultimate issues in the case," including

---

[9] It is not clear on the present record whether Dr. Rose last treated plaintiff in December 2021 (before the hip surgery), as her counsel suggested during the September 26, 2025 discovery conference, or in December 2022 (after the hip surgery, and after plaintiff sued Dr. Zelicof), as stated in her original and amended expert witness disclosures.

whether Walmart was "negligent" or whether its slippery floor was the "proximate cause" of plaintiff's injuries); *Shirley v. Washington State Dep't of Fish & Wildlife*, 2025 WL 1384803, at *4 (W.D. Wash. May 13, 2025) (excluding testimony of retained expert physician as to "whether Defendants provided a reasonable accommodation").

The question for this Court, therefore, is whether Dr. Rose may (without opining on whether or when plaintiff received a "reasonable accommodation") testify that plaintiff "spent approximately six months aggravating her [hip] injury"; that the aggravation was caused by "her performing tasks that she was not fit to do" while the DOT "delay[ed]" in providing the accommodations that Dr. Rose recommended; and that the "aggravation" "resulted in additional pain and injury that ultimately made her unable to stand for long periods of time." Amend. Exp. Discl. at ECF p. 5. In order to answer this question, I first consider whether plaintiff's expert disclosure satisfies Rule 26(a)(2)(C), and then (if it does not) whether the proposed opinion testimony is nonetheless permissible because it is "based solely on the information [Dr. Rose] acquired through [his] treatment" of plaintiff rather than "the opinions of any other doctor or any information learned through litigation." *Austin*, 2023 WL 3317906, at *2.

### A.    Rule 26(a)(2)(C)

Courts in our Circuit routinely preclude treating physicians from providing expert testimony where the party proffering their testimony fails to adequately disclose "a summary of the facts and opinions to which the witness is expected to testify," as required by Rule 26(a)(2)(C). *See*, *e.g.*, *Austin*, 2023 WL 3317906, at *1 (disclosure inadequate where it advised that treating physicians would testify that plaintiff injured his ankle/foot "on the job" but lacked "specifics"); *Glaudino v. Long Island R.R. Co.*, 2021 WL 4754769, at *3 (S.D.N.Y. Oct. 12, 2021) (disclosures inadequate where, "at most," they "put Defendant on notice that the physicians will opine that Plaintiff's alleged on the job accident caused him to suffer shock, anxiety, hypervigilance, PTSD

and lack of sleep," but "say nothing about what specific facts each physician is expected to discuss in support of their proposed opinions."); *Olutosin*, 2019 WL 5616889, at *6 (disclosure inadequate where defendant advised that prison physician would testify that plaintiff "suffered only minor, superficial injuries" as a result of a "use of force" incident, but failed to apprise plaintiff of the "specific facts to which [the doctor] intends to testify").

In *McAfee*, the plaintiff disclosed that his treating physicians would opine, among other things, that he sustained injuries to his abdomen and organs, requiring multiple surgeries, because he was "denied reasonable medical attention" for several weeks. 2017 WL 3184171, at *4. The court held this disclosure insufficient, explaining that while it "arguably provides disclosure on 'the subject matter on which the witness is expected to testify,' as required by Rule 26(a)(2)(C), [it] fails to contain 'a summary of the facts and opinions to which the witness is expected to testify,'" and thus does not "help the Defendants, much less the Court, understand what any of these treating physicians will offer specifically on the subject matter for which they were disclosed[.]" *Id.* at *5. Similarly, in *Kaganovich*, the court rejected – as insufficient under Rule 26(a)(2)(C) – plaintiff's disclosure that "Dr. Nissim will testify that she treated [plaintiff]; that she provided medical documentation requesting the reasonable accommodations, which included a transfer out of ICU, and to the medical [e]ffects [plaintiff] experienced as a result of the VA's failure to accommodate." 547 F. Supp. 3d at 274-75. And in *Puglisi*, the court concluded that a pair of 5-paragraph letters written by plaintiff's treating physician failed to set forth a "summary of the facts and opinions to which the witness is expected to testify", and were "therefore, insufficient to satisfy the requirements of Rule 26(a)." 2013 WL 4046263, at *5.[10]

---

[10] *Cf. Rodriguez*, 535 F. Supp. 3d at 210, 215 (physician's 3-1/2 page report, which "detail[ed] the history of his treatment of Plaintiff's ankle injury between August 2018 and June 2020," traced "several medical visits," "summariz[ed] the results of various physical examinations, X-rays and CAT scans, as well as Plaintiff's complaints and symptoms," and described physician's

The same is true here. Although plaintiff's expert disclosure identifies the "subject matter" of Dr. Rose's proposed testimony, including several opinions he intends to offer, neither counsel's one-page statement nor Dr. Rose's one-page letter sets forth, even in summary fashion, any of the *facts* on which his opinions are based. For example, Dr. Rose states that he evaluated plaintiff on June 7, 2021, reevaluated her on July 6, 2021, and referred her to Dr. Zelicof "to discuss total hip replacement," Amend. Exp. Discl. at ECF p. 5, but never discloses what symptoms she was experiencing, what he found on examination, what the diagnostic imaging revealed, or what diagnosis (if any) he made. Likewise, although Dr. Rose states that he recommended that plaintiff "work in a light duty capacity" to "accommodate her disability," *id.*, he never describes that "disability," even in general terms. He does not even disclose how many times he examined plaintiff, or when he ceased treating her.[11] Nor does he disclose any of the facts that led him to conclude that the delay in providing accommodations "resulted in additional pain and injury that ultimately made her unable to stand for long periods of time." *Id.*[12]

---

"observations and recommendations," was sufficient to "pass muster" under Rule 26(a)(2)(C)); *Geary v. Fancy*, 2016 WL 1252768, at *4 (W.D.N.Y. Mar. 31, 2016) (finding Rule 26(a)(2)(C) disclosure sufficient where it "indicated with fair detail [the doctor's] findings of multiple injuries and symptoms," "described [the doctor's] findings with respect to the significant limiting effects of Plaintiff's injuries[,]" and described the substance of the opinions he intended to offer).

[11] In her opposition letter, plaintiff states that Dr. Rose saw her "on six occasions" before DOT provided "a reasonable accommodation." Pl. Opp. at ECF p. 3. But that basic fact is absent from plaintiff's written expert disclosure. During the September 26, 2025 conference, plaintiff's counsel reported that Dr. Rose referred plaintiff "to another specialist" in December 2021. But Dr. Rose's letter states that she was referred to Dr. Zelicof much earlier, on July 6, 2021. Amend. Exp. Discl. at ECF p. 5.

[12] Dr. Rose is also vague as to time. For example, it is not clear from his one-page letter whether plaintiff was "unable to stand for long periods of time" by the end of 2021 (when she was still under his care), or whether that was the "ultimate" result of multiple factors, including her allegedly botched hip surgery.

These deficiencies are particularly glaring given that (according to plaintiff's state-court pleading), the "significant and disabling injuries" of which she now complains were "caused solely" by the malpractice of Dr. Zelicof, *see* Zelicof Compl. ¶ 47, which took place in June 2022, long after DOT assigned her to "100% desk duty," as she requested. FAC ¶ 51. I therefore conclude that plaintiff's expert disclosure is "insufficient to satisfy the requirements of Rule 26(a)," *Puglisi*, 2013 WL 4046263, at *5, because it "fails to contain 'a summary of the facts and opinions to which the witness is expected to testify,'" as required by subsection (2)(C)(ii), and thus does not "help the Defendant[], much less the Court, understand what [Dr. Rose] will offer specifically on the subject matter for which [he was] disclosed." *McAfee*, 2017 WL 3184171, at *4-5.

### B. Permissible Non-Expert Testimony

Dr. Rose may still testify as a fact witness. However, his testimony must be "limited to facts learned and opinions formed in his role as [plaintiff's] treating physician." *Puglisi*, 2013 WL 4046263, at *6. "[T]he key to what a treating physician can testify to without being declared an expert is based on [his] personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources.'" *Spencer*, 2011 WL 4383046, at *3 (quoting *Mangla v. Univ. of Rochester,* 168 F.R.D. 137, 139 (W.D.N.Y. 1996)). Thus, for example, if Dr. Rose observed as a result of his own examination and treatment of plaintiff that her hip condition worsened during the months after he recommended that she be limited to "light duty," he may so testify.[13] However, he "may not introduce information provided by other

---

[13] It is true, as defendant points out, that plaintiff's negligence claim was dismissed by the District Judge (*see* Dkt. 34 at 10-11), and that claims for damages arising from an on-the-job injury or death are exclusively compensable through the New York Workers Compensation Law (NYWCL). *See* NYWCL § 11 ("The liability of an employer prescribed by [the NYWCL] shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom[.]"). At present, however, plaintiff does not seek

physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor." *Id.* at *4; *accord McAfee*, 2017 WL 3184171, at *4; *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013).

Similarly, a treating physician testifying as a fact witness may not offer any "facts acquired or opinions formed outside of the treating physician role, including but not limited to information acquired during preparations for his testimony at trial." *Puglisi*, 2013 WL 4046263, at *6. Thus, if and to the extent Dr. Rose developed his opinions only after being approached to testify at trial, those opinions will be excluded. *See Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) ("[T]he testimony of Williams's treating physicians will be limited to opinions they actually formed during the course of treating Williams."); *Green v. McAllister Bros.*, 2005 WL 742624, at *13 (S.D.N.Y. Mar. 25, 2005) (same). By the same token, Dr. Rose may not testify about plaintiff's condition, symptoms, or prognosis at any time after he ceased treating her. *See Brutton v. United States*, 687 F. App'x 56, 58 (2d Cir. 2017) (trial court correctly permitted treating physician to testify as to "opinions he formed in the course of treating Brutton," but not about any "information he learned *after* treating Brutton").

### C.    Related Discovery Issues

"[B]efore a treating medical source may opine as to causation, the party [calling that medical source as a witness] must disclose all of his or her medical records." *Binns-Harty-Bolt v. McDonough*, 2024 WL 4817253, at *3 (S.D.N.Y. Nov. 18, 2024). Such disclosure is particularly

---

damages from the City for the hip injury she suffered in March 2021. Rather, she complains that DOT's failure to accommodate her resulting disability exacerbated her symptoms, causing additional pain, which may be compensable under the ADA. *See Kaganovich*, 547 F. Supp. 3d at 278 (ruling that a plaintiff seeking damages under the Rehabilitation Act may rely on the non-expert testimony of his treating physician to support his claim for "pain and suffering" resulting from his employer's alleged failure to accommodate his diabetes).

important where, as here, a treating physician proposes to offer causation testimony based solely on the personal knowledge that he gained during the course of his own treatment of the plaintiff. In such a case, the defendant is entitled to the plaintiff's complete medical records not only for impeachment purposes (in the event they contradict her testimony or Dr. Rose's concerning her hip injury, her resulting disability, the claimed deterioration of her condition in the second half of 2021, and/or the causes of that deterioration), but also to police the appropriate limits of Dr. Rose's non-expert testimony, as sketched above.[14] Consequently, plaintiff must promptly produce all of her remaining medical records from 2016 through the present (including those from Dr. Zelicof and Burke Rehab) and/or execute HIPAA-compliance releases permitting the City to obtain those records directly from the providers.[15]

For similar reasons, plaintiff must produce her correspondence with Dr. Rose; her lawyer's correspondence with Dr. Rose; and the transcript of her deposition testimony in *Samuels v. Zelicof*, as well as her bill of particulars and any other litigation documents that set out plaintiff's factual contentions and were exchanged among the parties to that action. Plaintiff need not, however,

---

[14] Defendant is not required simply to accept the representation of plaintiff's counsel that Dr. Rose's testimony will not rely on Dr. Zelicof's treatment records – particularly given counsel's admission that Dr. Rose had "access" to those records. Defendant is entitled to have its own counsel review Dr. Zelicof's records to determine whether and to what extent they appear to have been the source of Dr. Rose's testimony.

[15] During the September 26, 2025 discovery conference, plaintiff's counsel stated that he did not "possess" the Zelicof and Burke records. However, under Fed. R. Civ. P. 34(a)(1), the test is whether the documents are in the responding party's "possession, custody, or control," and "control" is defined broadly, to include documents in the physical possession of a party's agents, including her attorneys in other matters. *See Jade Farm LLC v. Mirahangiry*, 2022 WL 17586970, at *1 (S.D.N.Y. Nov. 29, 2022) (collecting cases); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013) ("Documents in the possession of a party's attorney may be considered to be within the control of the party.") (quoting 7 Moore's Fed. Prac. § 34.14(2)(c), at 34–80). Given the pendency of plaintiff's malpractice action against Dr. Zelicof, it seems highly likely that her counsel in that action does in fact possess a complete set of her medical records from Dr. Zelicof (and perhaps from Burke Rehab), as well as her deposition transcript and other relevant litigation documents. If so, Rule 34 requires plaintiff to produce them directly to defendant.

produce her complaint or other "pleadings" in the malpractice action, because these documents are readily available to the public through the New York State Unified Court System website.

Defendant may then take Dr. Rose's deposition.

## VII.    CONCLUSION

For the reasons set forth above, defendant's motion to strike and preclude (Dkt. 116) is GRANTED IN PART. Dr. Rose may not testify as an expert witness, but he may testify as a fact witness. In that capacity, he may offer opinions regarding plaintiff's condition, diagnosis, treatment and prognosis, including opinions as to causation, but only if and to the extent his testimony is based upon his own observations during his treatment of plaintiff, and his opinions were formed in the course of that treatment. Dr. Rose may not offer any opinions that are based, directly or indirectly, on information provided by Dr. Zelicof, other third-party medical providers, or plaintiff's counsel. Likewise, he may not offer any opinions as to plaintiff's current medical condition or its causes. Nor may he opine as to whether and when plaintiff received "reasonable" accommodations for her hip injury.

Further, before Dr. Rose may offer *any* opinion testimony, plaintiff must disclose: (i) all of her medical records, including the records of her hip replacement surgery and post-surgical rehabilitation, from January 1, 2016 to the present; (ii) all of her correspondence, and her attorney's correspondence, with Dr. Rose; and (iii) her deposition testimony in *Samuels v. Zelicof*, as well as her bill of particulars and any other litigation documents that set out plaintiff's factual contentions in that action and were exchanged among the parties thereto, but are not publicly available through the New York State Unified Court System website.

This case is already more than three years old. To the extent the documents described above are within plaintiff's possession, custody or control (as that phrase is used in Fed. R. Civ. P.

34(a)(1)), plaintiff must produce them within three weeks (21 days) of the date of this Order. To the extent the medical records are not within her possession, custody and control, she must provide HIPAA-compliant releases within one week (7 days) of the date of this Order. No later than **December 12, 2025**, the parties must submit a *joint* status letter, via ECF, updating the Court as to their progress and proposing a schedule for the remainder of expert discovery (*i.e.*, Dr. Rose's deposition and the service of defendant's expert disclosures, if any) and summary judgment.

Dated: New York, NY                          **SO ORDERED.**
       November 14, 2025

_____
**BARBARA MOSES**
**United States Magistrate Judge**